FILED
U.S. DISTRICT COURT

2015 MAR -2  P 3: 58

DISTRICT OF UTAH

BY:_____
       DEPUTY CLERK

LOREN M. LAMBERT, No. 5101
ARROW LEGAL SOLUTIONS GROUP, PC
Attorneys for Plaintiff
266 East 7200 South
Midvale, Utah 84047
Telephone: (801) 568-0041
llambert@arrowlegalsolutions.com

---

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| SARA YOUSEFI<br>p/k/a FATIMA YOUSEFI,<br><br>Plaintiff,<br><br>vs.<br><br>WAL-MART STORES INC, STEPHEN SCOTT SIMISTER,<br><br>Defendants. | **COMPLAINT AND JURY REQUEST**<br><br><br>Case: 2:15cv00135<br>Assigned To : Pead, Dustin B.<br>Assign. Date : 3/2/2015<br>Description: Yousefi et al v WalMart Stores et al |

Plaintiff alleges as follows:

### STATEMENT OF JURISDICTION

1. At the time that this cause of action arose, all parties were residents of Salt Lake County or were licensed and doing business in Salt Lake County, Utah. Stephen Scott Simister is sued in his official capacity as the perpetrator of the inappropriate conduct that is the subject of this lawsuit and as the agent for Walmart.

2. Plaintiff initially filed her complaint in this matter with the Utah Labor

Commission/EEOC and the EEOC issued her a Notice of Right to Sue. She received that Notice of Right to Sue, dated January 15, 2015, and therefore had to file this action within ninety days of receiving the Notice of Right to Sue.

3. Given that this claim is filed within the 90 days and is regulated by Title VII of the federal law jurisdiction is appropriate here in the Utah Federal District Court.

## FACTUAL ALLEGATIONS

### I. GENERAL BACKGROUND INFORMATION

4. Plaintiff is from Iran, has a slight and understated accent, has a distinctly Persian physical appearance and therefore is noticeably not native to the United States. In May 2012, one day after Memorial Day, while working for Defendants at a Walmart pharmacy in Salt Lake City, Utah; a customer, a large Caucasian male, between ages 55 to 64, six foot to six foot two in height, insulted Plaintiff by stating that as a foreigner she should not be living or taking up "American" jobs by working in the United States, she should return to her native land, and intimated that he wanted to be served by a white person. In his interaction with Plaintiff, this customer was visibly angry with Plaintiff. He raised his voice several levels so that he could be heard in a wide area outside of the pharmacy and within the pharmacy. He also inferred that Plaintiff was stupid and lazy. He referred to Plaintiff as being "garbage."

-2-

5. Plaintiff's supervisor, Stephen Scott Simister, also a white Caucasian male, was nearby and overheard this interaction. In fact, Simister saw that this encounter was upsetting Plaintiff yet he did nothing to intervene. Plaintiff asked her supervisor, Mr. Simister, why he did not intervene and requested that he protect her from any additional insulting and racist assaults by the customer by informing him that such behavior would not be tolerated. Simister responded that he would not take any action to protect her from this behavior and inferred that it was her own fault because she was unable to speak English without an accent. In his own statement written statement, Simister said "why" should he "stop what [he was] doing and defend her when a customer is upset about her communication skills."

Simister was newly working with Plaintiff. Plaintiff's prior supervisor, Firoozeh Patel, in accordance with Walmart's own policies, that it will not tolerate discriminatory or hostile behavior perpetrated by employees or customers, would protect her employees from sexual harassment and offensive and discriminatory behavior by customers. In fact, it is not unknown for customers to engage in behavior that is hostile or harassing due to an employee's sex, sexuality, race, national origin, color or disability. Plaintiff advised her supervisor that if he would not protect her she would take action to protect herself.

6. Under federal law, an employee of a business has a right to object to sexual harassment and hostile behavior based upon race, color, sex, and national origin, among other

-3-

types of prohibited discrimination. Employees subjected to this behavior can look to their employer to protect them from such harassment and discrimination and are not required to stand idly by when such behavior is perpetrated against them. It is a protected activity to object to and confront sexual harassment, racial, color or national origin harassment. Moreover, Walmart's own policies indicates that it has zero tolerance for such behavior exhibited by its employees or its customers and indicates it will take action to protect its employees from such behavior. Plaintiff therefor, after clocking out of work and outside of her work place, in a very low key non-confrontational manner told the white male customer that she thought his behavior was discriminatory and she did not appreciate it. She further stated that she would not tolerate further insults from him. He then said he would have her fired.

7. The customer returned to Walmart and informed Mr. Simister about Plaintiff's interaction with him. Defendants then terminated Plaintiff her for engaging in this protected activity.

8. Plaintiff denies being either demonstrably angry or aggressive, nor did she confront this costumer in a manner that was in any way out of proportion to the needs of the situation. Under the circumstances she remained very calm and professional. This can be demonstrated

through any evidence that Defendant claims to possess. In fact, Defendants have surveillance video of the brief interaction between the customer and Plaintiff.

9. While it is more common in the sexual harassment area of the law[1], employees do not have to tolerate either sexual verbal assaults or racial, national origin and color verbal assaults. Once an employee has put the employer on notice that they are being sexually harassed or assaulted because of their national origin and the employer fails to take action, the employee has a right to take action to stop the assaultive behavior and Defendant cannot take retaliatory action against them for doing so.

10. Defendants violated the law by failing to protect Plaintiff from this customer and by retaliating against her for complaining and for taking proportionate action to protect herself.

11. Even if Plaintiff was mistaken and the customer's rude behavior was innocent, Defendants cannot retaliate because she engaged in the protective activity of complaining about discrimination and from acting to prevent racist assaults against her.

---

[1] If the customer had called Fatima a whore and then asked her for a sexual favor and Walmart had failed to take action when asked to protect her, they cannot retaliate against Fatima if she would have confronted the customer about his sexism and told him she would not tolerate it.

12. Defendants condoned a hostile work environment by permitting patrons to harass Plaintiff and others due to her national origin, race, and color.

13. Defendants retaliated against Plaintiff for complaining about being subjected to a hostile work environment based on race, national origin, and color and when it was apparent that her employer would not protect her from a hostile work environment based on race, national origin, and color, and she was forced to take action to correct this problem. After doing so she was retaliated against.

14. Retaliation against the Plaintiff occurred through termination.

15. Defendant Walmart also violated the law because it had failed to train Defendant, Mr. Simister regarding what he should do, in accordance with Walmart's own policies and federal law if a customer acted in an inappropriately discriminatory or harassing manner towards an employee. In fact, Defendant Mr. Simister had never been provided with a copy of Walmart's policy regarding customer perpetrated discrimination and harassment.

## CAUSES OF ACTION
**Race Discrimination, Hostile Work Environment, Harassment and Retaliation - Defendants**

16. Defendants have a duty to protect their employees from racial, national origin and color[2] harassment from both fellow employees and from customers. It also has a duty to provide a healthy workplace for its employees and customers, free from a workplace that is hostile based on ones national origin, race and color. It cannot sacrifice its employees for the sake of pleasing a racist customer and condoning a customer's boorish and insulting behavior. Defendants failed to take any action thereon by in fact subjecting Plaintiff to a hostile work environment and by retaliating against Plaintiff by:

● failing to train its management employees regarding their obligation to protect their employees from prohibited discrimination and harassment,

● terminating Plaintiff's employment because she engaged in the protected activity of stopping the hostile and discriminatory behavior, and by,

● terminating Plaintiff for complaining about being subjected to a hostile work environment based on race, national origin, and color and when it was apparent that her

---

[2]Walmart laments that although Fatima indicates she is "Iranian and Persian," she says nothing about her race or color. Walmart's agent Mr. Phillips should be forgiven for being so ignorant given his adversarial role. Nonetheless, for his inculcation, "The origin of the ethnic Iranian/Persian peoples are traced to the Ancient Iranian peoples, who were part of the ancient Indo-Iranians and themselves part of the greater Indo-European ethnic group." http://en.wikipedia.org/wiki/Persian_people. While "ethnicity" does not directly correlate with "Race," in this case, Fatima considers herself a member of the ancient "race" of the Irini or Tajik people and her skin color is noticeably more olive and darker than western European Caucasians.

employer would not protect her from a hostile work environment based on race, national origin, and color, and she was forced to take action to correct this problem,

- condoning a hostile work environment by permitting patrons to harass Plaintiff and others due to her national origin, race, and color, and

- failing to protect Plaintiff from this customer and by retaliating against her for taking proportionate action to protect herself.

## DAMAGES

17. By June 20, 2015, Plaintiff will have suffered about $64,000 in special damages or as the Court determines as follows:

> a. **WalMart -** Plaintiff was making $15.90 per hour and was working 40 hours per week at the time Defendant terminated her on June 19, 2012. ($15.90 x 40 hours = $636.00 per week) x (52 weeks in a year) is $33,072 x 2 years = **$66,144.00**

> b. **Temp Jobs in Medical Supply -** Plaintiff worked for 6 weeks on temp jobs making $15.00 per hour. ($15.00 per hour x 40 hours = $600) x 6 weeks = **$3,600.00**

> c. **Community Nursing Services (CNS)-** Plaintiff was hired by CNS on June 17, 2013 and presently still employed making $16.00 per hour. ($16.00 x 40 hours = $640) x 43 weeks = **$27,520.00**

> d. From June 21, 2014 until June 20, 2015 Plaintiff will have sustained an additional approximately $32,000 in special damages and will continue to suffer this loss into the immediate future.

18. Defendants should pay Plaintiff's attorney fees and costs.

### Proviso

19.    This Complaint was not drafted by Plaintiff, but was drafted by her attorney after speaking with Plaintiff, reviewing all of the evidence that Plaintiff was able to obtain from the Defendants' possession, attending the hearings in the Industrial Commission and taking depositions. Although Plaintiff and her counsel are confident that the core allegations of her complaint are valid, the exact details on what occurred to Plaintiff and who specifically caused Plaintiff harm may vary from the alleged facts once information is exchanged through the mandatory court discovery process.  In conclusion, this Complaint is not Plaintiff's statement; it is a compilation of information regarding what Plaintiff believes, to the best of her and her counsel's knowledge and information regarding what the facts will show.  The complaint should be read as a whole with all allegations linked to each other and the amounts pled herein are not to be meant to limit the jury's discretion to award more or less damages based upon the facts of this case alone.

### JURY REQUEST

Plaintiff requests a jury trial in this action.

WHEREFORE the Plaintiff requests:

(1).    That Defendants be found to have committed all the torts indicated above,

(2).    That the Defendants pay their proportionate share of general damages, special damages, if any, punitive damages, attorney's fees and costs.

(3).    Defendants pay whatever other equitable relief is granted by the court.

(4).    That Plaintiff be awarded at least $64,000 in special damages, $75,000 in general damages, $30,000 in punitive damages and any other monetary damages that arose from the causes of action as noted above.

(5).    Any other relief this Court deems just and equitable.

DATED this 27 day of February 2015.

_____
Loren M. Lambert
Attorney for Plaintiff