IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SARA YOUSEFI p/k/a FATIMA YOUSEFI,<br><br>        Plaintiff,<br>vs.<br><br>WAL-MART STORES INC., STEPHEN SCOTT SIMISTER,<br><br>        Defendants. | **MEMORANDUM DECISION & ORDER**<br><br>Civil No: 2:15-cv-00135<br><br>Magistrate Judge Dustin B. Pead |

On December 9, 2015, Defendants Wal-Mart Stores, Inc. (Wal-Mart), and Stephen Scott Simister (Mr. Simister) (collectively Defendants), filed a motion for summary judgment seeking dismissal of Plaintiff Sara, p/k/a Fatima Yousefi's (Ms. Yousefi or Plaintiff) claims (ECF No. 16.) Oral argument on the motion was held on June 16, 2016 (ECF No. 24.)[1]

Having considered the parties' arguments, written memoranda and relevant legal authorities, the court now rules as set forth herein and grants Defendants' motion.

## UNDISPUTED FACTS

1. Ms. Yousefi was born in Sanandaj, Iran. Deposition of Fatima Yousefi (Sep. 23, 2014) ("Yousefi Depo.") at 6:14-19. In March 2001, Ms. Yousefi immigrated to the United States with her husband and three children. Yousefi Depo. at 6:20-24.

2. Wal-Mart employed Ms. Yousefi as a pharmacy technician from October 2007 through June 2012. Deposition of Fatima Yousefi (Sep. 23, 2014) ("Yousefi Depo.") at 13:6-7, 16:2-5.

---

[1] The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. (ECF No. 9.) *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73

3. On the afternoon of May 29, 2012, Ms. Yousefi was working at the pharmacy prescription drop-off station at a Wal-Mart store in Murray, Utah. Yousefi Depo. 21:4-6, 40:12-41:18; Deposition of Mr. Simister (Sep. 17, 2014) ("Simister Depo.") at 79:9-23.

4. While Ms. Yousefi was at the drop-off station, she was approached by an older male customer. Yousefi Depo. 41:17-20, 44:18-45:5. The customer had difficulty understanding Ms. Yousefi and became frustrated. Yousefi Depo. 41:17-42:22.

5. During the interaction, the customer threw[2] his prescription paper and a check from his checkbook toward Ms. Yousefi. Yousefi Depo. 42:5-22, 47:17-48:1 The customer threw the check toward Ms. Yousefi to enable her to correct the customer's address on file, which had been previously entered incorrectly. Yousefi Depo. 42:5-22, 47:17-48:1. In addition, during the interaction, the customer told Ms. Yousefi that: he did not understand her; she could not speak English; she did not have enough education; she could not communicate with customers; she was speaking in different languages; she should not be taking other people's jobs or opportunities; she should not be in the United States; she should go back to her country; and her English was "garbage." Yousefi Depo. at 42:23-43:14, 50:20-52:2, 73:12-74:15.

6. Aside from the customer throwing his prescription paper and check toward Ms. Yousefi, Ms. Yousefi did not remember the customer pointing his finger at her, raising his hands above his shoulders, or making any other aggressive gestures with his hands during their conversation. Yousefi Depo. at 47:12-48:15.

---

[2] Ms. Yousefi physically demonstrated the customer's actions during her deposition. For purposes of the record, her physical demonstration was described by her attorney as "with her right hand, underhand with the palm facing her body, with her thumb and index finger, [Ms. Yousefi] made a motion like the person had the check and prescription between her thumb and her forefinger, palm forward, and flicking the wrist forward, throwing the check or prescription." Yousefi Depo. at 47:20-25, 48:1.

7. Mr. Simister, the pharmacy manager, was working approximately ten to twelve feet away from Ms. Yousefi at the time of the customer incident. Simister Depo. at 91:23-92:1. Mr. Simister overheard the customer tell Ms. Yousefi that he did not understand her and that her communication was "garbage." Simister Depo. at 91:12-22.[3]

8. During the interaction, Ms. Yousefi did not ask her co-workers or Mr. Simister for assistance in dealing with the frustrated customer. Yousefi Depo. at 49:1-22; 66:25-67:17. Additionally, Mr. Simister did not intervene while Ms. Yousefi was interacting with the customer. Simister Depo. at 97:17-98:1.

9. Ms. Yousefi's interaction with the customer lasted about ten minutes. Yousefi Depo. at 47:7-11, 48:16-18.

10. After her interaction with the customer was over, Ms. Yousefi discussed the incident with Mr. Simister. Simister Depo. at 97:17-98:1; Yousefi Depo. at 52:3-12. Ms. Yousefi asked Mr. Simister why he did not intervene on her behalf, and informed Mr. Simister that she planned on clocking-out and confronting the customer. Yousefi Depo. at 52:3-17. Mr. Simister explicitly told Ms. Yousefi not to confront the customer. Yousefi Depo. at 52:13-18, 53:22-54:2.

11. After her conversation with Mr. Simister, Ms. Yousefi clocked-out and began waiting for her youngest daughter, who was supposed to meet Ms. Yousefi at the store. Yousefi Depo. at 54:8-11.[4]

---

[3] For purposes of this motion, Defendants do not dispute that Mr. Simister overheard the entire conversation between Ms. Yousefi and the customer. As detailed further below, even assuming that Mr. Simister overheard the entire conversation between Ms. Yousefi and the customer, Ms. Yousefi does not have an actionable claim against Defendants.

[4] This fact is not disputed by Defendants solely for the purposes of this Motion.

12. While Ms. Yousefi was waiting for her daughter to arrive, the customer interrupted Ms. Yousefi's conversation with another Wal-Mart associate and asked Ms. Yousefi "What? What you want with me? Do you have any question for me?" with a loud voice. Yousefi Depo. at 54:21-55:2. Nina, the Wal-Mart associate Ms. Yousefi was speaking with, informed the customer that she and Ms. Yousefi were not talking about him. Yousefi Depo. at 55:2-5.[5]

13. Thereafter, Ms. Yousefi approached the customer while he was leaving the store. Yousefi Depo. at 59:1-15. While Ms. Yousefi and the customer were in the parking lot, Ms. Yousefi told the customer, "Sir, I think you were very unfair and racist person." Yousefi Depo. at 59:1-60:10; Mora Depo. at 43:8-15.

14. After the confrontation in the parking lot, the customer returned to the pharmacy to report the incident to Mr. Simister. Simister Depo. 95:11-96:9.

15. Wal-Mart conducted a formal investigation into Ms. Yousefi's interactions with the customer. Deposition of Tim Rombach (Aug. 13, 2015) ("Rombach Depo.") at 12:24-14:5.

16. Thereafter, Ms. Yousefi's employment with Wal-Mart was terminated for insubordination and for being aggressive and harassing toward a customer. Rombach Depo. at 62:25-63:22.

**SUMMARY JUDGMENT STANDARD**

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The summary judgment rule allows courts "to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323-24.

---

[5] This fact is not disputed by Defendants solely for the purposes of this Motion.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute regarding a material fact only exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"In determining whether summary judgment is appropriate, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011) (quoting *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1146 (10th Cir. 2007). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999) (internal quotation omitted).

## DISCUSSION

Ms. Yousefi's Complaint alleges three claims: (1) Defendants maintained a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) racial discrimination or harassment in violation of Title VII; and (3) retaliation in violation of Title VII. Each of these claims is addressed herein.

**Ms. Yousefi's Hostile Work Environment Claim Fails as a Matter of Law.**

To establish a prima facie case of hostile work environment based upon race discrimination or harassment, a plaintiff must establish that "'under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'"

*Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998) (quoting *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).

> A showing of pervasiveness requires more than a few isolated incidents of racial enmity. . . . A plaintiff must produce evidence to show that the workplace was permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.

*Bloomer v. United Parcel Service, Inc.*, 94 Fed.Appx. 820, 825 (10th Cir. 2004) (citations and internal quotations omitted). "The plaintiff must show more than a few isolated incidents of racial enmity . . . there must be a steady barrage of opprobrious racial comments." *Bolden*, 43 F.3d at 551 (internal quotations omitted).

A single incident is generally insufficient to create a hostile work environment, unless it is "extremely serious." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Factors to be considered in deciding whether a work environment was hostile as a matter of law include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

In this case, the undisputed facts do not support the existence of a hostile work environment based upon pervasive harassing or discriminating comments or conduct. Ms. Yousefi's claim relies solely upon a single incident with the customer. Ms. Yousefi's interaction with the customer was of brief duration and, although offensive and unfortunate, the customer's actions do not constitute the type of "steady barrage of opprobrious racial comments" that is necessary to support a finding of pervasiveness. *See Bolden*, 43 F.3d at 551.

Additionally, the customer's behavior was not sufficiently severe to create a hostile work environment. While the Court in no way condones the customer's boorish and offensive

conduct, the conduct during this single incident was not severe enough to give rise to a viable cause of action under Title VII. *See Cooper v. American Airlines, Inc.*, 213 Fed.Appx. 714, 715-16 (10th Cir. 2007) (finding that a single incident where an employee attempted to wrestle flyers away from the plaintiff, began "bumping and humping" the plaintiff's leg, and made "African gibberish" noises at the plaintiff, while other employees chanted derogatory racial slurs did not create a hostile work environment).

Here, the customer did not physically threaten or touch Ms. Yousefi, did not use any profanity or racial slurs, and the interaction was an isolated incident of brief duration. Even when all facts are considered in the light most favorable to Ms. Yousefi, the customer incident is insufficient to support a hostile work environment claim under Title VII and Defendants are entitled to judgment as a matter of law.

**Ms. Yousefi's Racial Discrimination or Harassment Claim Against Defendants, Based on the Customer's Actions, Fails as a Matter of Law.**

Under Title VII, an employer may only be responsible for racial discrimination or harassment based upon the acts of a customer where all of the following elements are met: (1) the customer's actions are determined to be racially discriminatory or harassing, which requires that there be a steady bombardment of derisive racial comments as opposed to a few isolated instances of racial enmity; (2) the employer knows or should have known of the conduct, and (3) the employer fails to take immediate and appropriate corrective action. *See Bolden*, 43 F.3d at 551; *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001) (quoting 29 C.F.R. § 1604.11(e). A negligence standard is applied in determining whether an employer should have known of harassing conduct. *Turnbull*, 255 F.3d at 1244 (*citing Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1074 (10th Cir. 1998)).

As discussed above, the interaction between Ms. Yousefi and the customer was an isolated incident of brief duration. Even when viewed in the light most favorable to Ms. Yousefi, the incident does not constitute a "steady barrage of opprobrious racial comments" necessary to support a cause of action for racial discrimination or harassment. *Bolden,* 43 F.3d 545 at 551. Further, even accepting that Mr. Simister was willfully ignorant of the customer's comments and his proximity to the interaction constitutes an aggravating factor, the customer's comments were isolated and not sufficiently pervasive or severe to constitute racial discrimination or harassment. Accordingly, Defendants' knowledge of the full extent of the customer's comments is immaterial. The customer's conduct was insufficient to support a cause of action for racial discrimination or harassment under Title VII and Defendants are entitled to judgment as a matter of law.[6]

**Ms. Yousefi's Retaliation Claim Fails as a Matter of Law.**

"To state a prima facie case of retaliation, [the plaintiff] must show that: (1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse[7]; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). If the prima facie case is made, the employer may respond with a "legitimate, nonretaliatory reason for its termination decision." *Id.* at 1172. To defeat summary judgment, the plaintiff must then "show that there is a genuine dispute of material fact as to whether [the employer's] explanations for terminating her employment are pretextual." *Id.* Based thereon, the court addresses Ms. Yousefi's retaliation claim.

---

[6] The Court does not need to address the immediacy or appropriateness of the employer's corrective actions since it concludes the customer's actions in question were not racially discriminatory or harassing.

[7] The parties do not dispute that Wal-Mart's termination of Ms. Yousefi's employment was a materially adverse action.

**1. Ms. Yousefi Did Not Engage in a Protected Activity.**

Ms. Yousefi argues that her confrontation with the customer in Wal-Mart's parking lot was a protected activity under Title VII. Title VII makes it unlawful for an employer to discriminate or retaliate against an employee because the employee "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a); *see also Petersen v. Utah Dept. of Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("Opposition to <u>an employer's conduct</u> is protected by § 2000e-3(a) only if it is opposition to a 'practice made an unlawful employment practice by [Title VII].'") (Emphasis added).

Ms. Yousefi cites to *Williams v. City of Kansas City, Mo.*, 223 F.3d 749, 753 (8th Cir. 2000) to support her argument.[8] The facts at issue in *Williams* are inapposite to the instant matter. In *Williams*, the plaintiff alleged that her supervisor sexually harassed her and then retaliated against her after she asked him to leave her alone and let her do her job. *Id.* at 751-52. Because the alleged harasser in *Williams* was the plaintiff's supervisor, any alleged wrongful

---

[8] Ms. Yousefi's cited authorities do not support her claim that confronting a customer is a protected activity. Moreover, Ms. Yousefi's reliance on language from *Matima v. Celli*, 228 F.3d 68, 78 (2d Cir. 2000), approving "writing critical letters to customers" does not support her argument. *Matima*, and the cases it is based upon, indicate that employees may write letters to customers criticizing <u>an employer's</u> unlawful employment practices, not letters criticizing the customers' own conduct. *See EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012-14 (9th Cir. 1983) (employee's letter to customer complaining about the <u>employer's</u> unlawful employment practices was a protected activity); *Sumner v. U.S. Postal Service,* 899 F.2d 203, 209 & fn. 4 (2d Cir. 1990). In addition, the EEOC Compliance Manual states that an employee's complaint must be about "alleged employment discrimination," and the complaint only constitutes protected opposition "if the individual explicitly or implicitly communicates a belief that the practice constitutes <u>unlawful employment discrimination</u>." EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, TRANS. NO. 915.003, EEOC COMPLIANCE MANUAL, SECTION 8: RETALIATION, P. 8-4 (1998) (emphasis added); *Crown Zellerbach Corp.,* 720 F.2d at 1013 (an "employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to *some* practice by the employer that is allegedly unlawful"). In this instance, Ms. Yousefi confronted the customer solely to discuss his offensive conduct; not to complain that Wal-Mart or Mr. Simister were engaged in an unlawful employment practice.

conduct of the supervisor could be attributed to defendant employer. As a result, the plaintiff's confrontation of the alleged harasser could be viewed as protected opposition to an unlawful employment practice of the defendant employer.

Conversely, in this case, the alleged harasser was a Wal-Mart customer, not Ms. Yousefi's supervisor. Given that Ms. Yousefi's opposition was directed at the customer's own offensive conduct, it was not in opposition to an unlawful employment practice attributable to Defendants and was not protected under Title VII. *See Folkerson v. Circus Circus Enterprises, Inc.*, 107 F.3d 754, 755 (9th Cir. 1997) (holding that to be considered a protected activity under Title VII, "the opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual") (quoting *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir. 1978) ("[N]ot every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual. . . .The specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees.").

Since Ms. Yousefi's confrontation of the customer was not a protected activity, she cannot establish a prima facie claim of retaliation. Therefore, Defendants are entitled to judgment as a matter of law as to Ms. Yousefi's retaliation claim.

**2. Wal-Mart Offered Legitimate, Non-Retaliatory Reasons for Termination.**

Next, even assuming Ms. Yousefi's confrontation was a protected activity under Title VII, which the Court holds it was not, Wal-Mart has offered legitimate, non-retaliatory reasons for its decision to terminate Ms. Yousefi's employment. In this case, Wal-Mart conducted a

formal investigation into the incident and terminated Ms. Yousefi's employment for insubordination and for being aggressive and harassing toward a customer.

Insubordination is a legitimate, non-discriminatory reason for terminating employment. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007); *Matson v. St. John Health System, Inc.*, 296 Fed.Appx. 630, 634 (10th Cir. 2008). Moreover, the Court finds that Wal-Mart has a legitimate interest in preventing physical or verbal altercations between employees and customers on its property.[9] Thus, the Court finds that Wal-Mart's proffered reasons for Ms. Yousefi's termination are lawful, non-retaliatory reasons for termination.

### 3. Ms. Yousefi Fails to Offer Any Evidence of Pretext.

Finally, even if Ms. Yousefi established a prima facie case of retaliation, which she has not, her claim for retaliation fails based upon her failure to offer any evidence to support the claim that Wal-Mart's proffered reasons for termination were pretextual. Once an employer states a non-discriminatory reason for termination, the "burden then shifts back to the plaintiff to *present evidence* such that a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual, that is, unworthy of belief." *Hardy,* 185 F.3d at 1079-80 (internal quotation omitted) (emphasis added). "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988).

---

[9] Importantly, Wal-Mart's proffered reasons for termination are legitimate and non-discriminatory even if they were based upon incomplete or inaccurate information. "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (quotation and alteration omitted); *see also Tran v. Trs. Of State Colls. In Colo.*, 355 F.3d 1263, 1268-69 (10th Cir. 2004) (employer's good faith belief "would not be pretextual even if the belief was later found to be erroneous").

Ms. Yousefi alleges that Wal-Mart's proffered reasons for her termination are pretext. However, Ms. Yousefi fails to offer any evidence to support such claim. In the context of a motion for summary judgment, Ms. Yousefi's failure to present any evidence that Wal-Mart's stated reasons for her termination were pretext for intentional discrimination is fatal to her retaliation claim. Thus, Defendants are entitled to judgment on Ms. Yousefi's retaliation claim as a matter of law.

## CONCLUSION

Based upon the forgoing, the Court grants Defendants' Motion for Summary Judgment as to each cause of action alleged in Plaintiff's Complaint (ECF No. 16.)

SO ORDERED.

DATED: July 12, 2016.

_____
Dustin B. Pead
United States Magistrate Judge